The first case we're going to hear this afternoon is in Re Trump Entertainment Resorts, number 14-4807. Ms. Kreiger, we'll hear from you. Good afternoon, Your Honor, Kathy Kreiger, representing the appellant in I'd Hear Local Union 54. I'd like to reserve at least five minutes for rebuttal. Five minutes is granted. Thank you. We appreciate the courts accepting the party's direct appeal and taking the opportunity to clarify the law and correct fundamental legal errors below. I'd like to start with one point on which the debtors and the union agree in this case. The debtors specifically agree that Section 1113 of the Bankruptcy Code does not authorize courts to reject statutory obligations, and they make that concession at page 35 of their brief. But that's exactly what the court below did, and that's just what the debtors are here today asking this court to do. We've shown in our briefs that the only way the debtors can get around that fact is to have this court make up something that's unrecognizable out of traditional bankruptcy law and the National Labor Relations Act. But if we look at the purpose of Section 1113, which was to balance the concerns of an economically stressed debtor to avoid liquidation and the goal of ensuring that the union has a voice in the impact of those financial circumstances, doesn't it make sense that the court, and those conditions that could detrimentally impact the life of the debtor, whether it's by operation of the collective bargaining agreement or those conditions in that agreement that continue as a result of the NLRA? Your Honor, that's a policy question that would be properly addressed to Congress, but everything that the record shows makes it clear that Congress did not intend to do that. If you step back to what gave rise to 1113, the Bill Disco decision confirmed that collective bargaining agreements were just one category of executory contracts that were subject to assumption and rejection under the same rules that applied to all other contracts. And the only area of overlap and disagreement between the Bankruptcy Code and the National Labor Relations Act that was addressed in Bill Disco and that was resolved in 1113 was one narrow area, and that is during the life of a contract, during its stated term, the Bankruptcy Code said a debtor is free to reject it promptly upon, simply by filing a petition to put it in limbo and then assume or reject it in accordance with the Bankruptcy Code. The National Labor Relations Act said one thing, just the exact opposite, when a contract is in effect. It's only when a contract is in effect by its terms, during its stated term, that either party has an obligation to even consider renegotiating it and no party can force the other party to put it in limbo or modify it. And so, you know, when I look at Bill Disco, I see a situation where there were debtors who were declaring bankruptcy not because they really needed bankruptcy, but because they wanted to get rid of a collective bargaining agreement and they, under Section 365, they were able to do so and the Supreme Court permitted that and Congress said, hey, wait, now, we understand that debtors may have a need to vary or amend or reject a collective bargaining agreement, but it has to be central to the whole purpose of the bankruptcy petition and the reorganization and so they enacted Section 1113, which put in safeguards to make sure that the collective bargaining agreement was not being rejected because of a desire to avoid it or evade it was being rejected because it was necessary to keep the debtor in business. And we now have the situation, which hasn't come up before, of what if the debtor is still being constrained to follow most of the provisions of the collective bargaining agreement, but the agreement has expired. And I think it's consistent with Bill Disco and the reasons for enacting Section 1113 that we recognize that in order to keep the debtor in business the NLRA applies, in order to ensure that when the bankruptcy code, if I may coin a phrase, trumps the NLRA, it does so only for reasons that will permit the bankruptcy proceeding to go forward in a manner to keep the reorganization going and keep the debtor in business. Your Honor, Bill Disco was far narrower than that and what Congress did was then to improve on Bill Disco in favor of protecting labor agreements. But Bill Disco specifically acknowledged, the Court there said, that the only thing it was dealing with was an impediment to renegotiation that happened to exist because a collective bargaining agreement under the National Regulations Act could not be modified unilaterally in midterm. In Bill Disco, the debtor was one year into a three-year agreement and without clearing the way to renegotiation, there was no prospect of getting a voluntary agreement in the Court's view, which could help to facilitate, protect both the interests of the creditors and the debtor. The only thing that Congress addressed was that particular situation. Given that a contract during its stated term stands as a bar to renegotiation under the National Regulations Act, how can we modify that in bankruptcy? You say that's the only purpose of Section 113, but I have read in a number of places and heard discussion of the fact that Section 113 was to prevent this activity of people going into bankruptcy simply to evade or avoid collective bargaining agreements. It was an abuse of the system. And that would definitely be part of it, because by making it slightly harder to reject collective bargaining agreements than ordinary contracts, it would prevent the absolute abuse of it. But there were significant safeguards put in there, too. Exactly, but the safeguards that Congress put in were only to make sure that the debtor was complying with the requirements of the Bankruptcy Code by demonstrating that this action was necessary for the business to survive. Actually, what 1113C does, it's a negotiation forcing mechanism, because it doesn't, it didn't purport to, and BILDISCO didn't purport to, substitute the bankruptcy regime for any of the debtor's labor bargaining obligations that existed. In BILDISCO itself, at Page 1 of the decision, the Court says that immediately upon applying for rejection, even under the old regime, the debtor was still obligated to bargain for a new contract with the union under labor law principles, and after rejection do the same. And the Court made very clear that the Bankruptcy Court has no business presiding over any of the standards for pure labor negotiations. Under labor law, it is only during the term of the contract when the parties are shielded from renegotiation. As soon as the contract expires, the parties are in an entirely different universe. There's no piecemeal assumption of rejection in bankruptcy, and there's no piecemeal contract. And if time is important during the bankruptcy proceeding, how would it be handled then? What happens is if a debtor enters bankruptcy with an expired agreement, or the agreement expires here shortly after the petition, what happens is the debtor is no longer obligated under 1113 to justify to anybody its proposals for renegotiation, and there are no barriers to renegotiation. The standard free collective bargain under the National Labor Relations Act is such that any debtor whose contract has expired is free to bargain for whatever they think would be advantageous. But that debtor then has to carry with it in this expired period the financial obligations to sustain those continuing conditions in the same way that it had to fulfill them under the collective bargaining agreement. The same financial difficulties confront that debtor. Well, what the debtor is trying to do is look towards its long-term reorganization. And so the status quo obligations, which are not the entire contract but only certain aspects of the contract that exist during the period it takes to negotiate, which could be two sessions, it could be five weeks, it could be eight weeks, that is the only thing that's an issue under the National Labor Relations Act. The debtor is free to negotiate as quickly, as aggressively as it wants for anything it wants, and without having to justify either to a bankruptcy charge to the union or to the labor board that anything it asks for is necessary. Doesn't your interpretation end up treating employees under a collective bargaining agreement that's expired in some ways better than an employee who's under an unexpired agreement? Because employees under an unexpired agreement face a debtor who could go and get it rejected. But you're saying those under an expired agreement who don't face that are actually protected better. Does that make sense? They're not actually protected better, Your Honor, because, again, under the 1113C regime, if the debtors have their way, all debtors will be forced to justify any post-expiration bargaining under very, very stringent bankruptcy code standards in which every aspect of the proposal they make has to pass the necessity, fair, and equitable test. Whereas in this case, the debtor was free to negotiate for whatever it wanted as aggressively as it wanted, and the employees had no ability to block the debtor from implementing on the basis that it wasn't strictly necessary for reorganization. Thank you, counsel. So what the debtor is asking for is a rule that would apply to all debtors and take away their National Liberations Act bargaining rights as soon as they happen to be in the  Thank you, counsel. Thank you, counsel. Okay, thank you, counsel. Mr. Engelert. Engelert. Yes. May it please the Court, I'm Roy Engelert. I represent the debtors. The test of Section 1113, the policy of Section 1113, the policy of the code more generally, and the need to avoid an absurd result all point in the same direction. A debtor that meets all of Section 1113's very stringent requirements can reject a collective bargaining agreement, whether or not the agreement is unexpired. Where in the text would we be able to see that the collective bargaining agreement conditions that it continue by way of the Act are covered by 1113? What text? 365A and 1113A laid side by side. Okay, so by omission of executory unexpired, you're saying that is what we should infer to mean this collective bargaining agreement covers both that which is an unexpired agreement as well as the conditions continuing. Yes, that is an extremely powerful textual argument in our favor. And without 365A, how do we, if we were not to put that into the formula, what would be your argument on the other provision, on 1113? The need, given the way the National Labor Relations Act operates following NLRBVCATS, the need for relief from a collective bargaining agreement is exactly the same post-expiration as it is pre-expiration. And I follow. So the power given by Congress in Section 1113, without any limitations such as unexpired or executory, is a power that makes perfect sense in the situation in which the obligations are continuing via the combination of the NLRA and the collective bargaining agreement. The alternative is the bizarre result in which while a contract is in effect, a bankruptcy court can change it. But once it expires, it acquires more binding status on the parties than it had while it was actually in effect. That simply makes no sense. And, well, you might think that Congress would have thought of that, but they didn't write the statute that way. Well, respectfully, Judge Sirka, I think Congress did give us a very strong textual clue as to how it wanted the statute to operate by omitting from 1113a key word from 365a, unexpired and executory. And it makes sense. Our position makes sense. It fits with the policy underlying the bankruptcy code in general and this provision in particular. And it's entirely textually supported because one can lay 365 and 1113 side by side and see that a key limitation or two key limitations, unexpired and executory and 1113 are not present in 365. So there is text as well as policy and logic to support this position. If we look at 1113f, it says, no provision of this title shall be construed to permit a debtor to unilaterally terminate or alter any provision of a collective bargaining agreement prior to compliance with the provisions of this section. If we adopt the appellant's interpretation of collective bargaining agreement, that would mean then that once the agreement had expired, the debtor was free to do anything they wanted to do. Separately, there are obligations under NLRBPS. If I look at this section with the definition that the appellant has given, it would seem to give the debtor free hand once the collective bargaining agreement had expired, to have free hand to terminate or alter any provisions. And so only if we read collective bargaining agreement as in effect or the ongoing statutory requirements afterwards do we find any constraint put on the debtor. That's a helpful point, Your Honor, and I accept it. The usual rule of statutory interpretation is that the presence of a word in one section in its absence from another is presumed to be intentional. The union argues, however, that section 365 is somehow a floor on the section 1113 power, so that every limitation from section 365 must be read into section 1113. But there is no cross-reference between the two sections. They're historically related in the sense that section 365 was used in Bilbisco to abrogate a collective bargaining agreement, and section 1113 was passed in response to that decision. This court in its Wheeling-Pittsburgh decision observed that the procedural gauntlet and substantive criteria of section 1113 do make it much harder to elect a collective bargaining agreement than it had been under Bilbisco. But nowhere did anyone say that the scope of section 1113 is the same as or narrower than section 365. Instead, what the text of 1113 and Wheeling-Pittsburgh's interpretation of it show is that 1113 really is Congress's comprehensive effort to address the rejection of collective bargaining agreements in bankruptcy. The prescribed procedure involves expedited bargaining and submission of the dispute to a bankruptcy judge. How do you address your adversary's point in there, Brice, about the fact that 1113 only talks about rejection and doesn't talk about assumption? I understood them to make the opposite argument, Your Honor, that the reference to acceptance in 1113. They only talk about rejection in 1113, right? 1113, it says, may accept or reject. But then there's no further reference to acceptance in 1113 because the statute is all about what it takes to reject, which is typically what is going to happen when a debtor is in straitened circumstances and labor costs are part of the reason for it. Now, 1113 exists to sort of expedite or ensure that there is negotiation between a strapped debtor and its workforce, right? Correct. That's why it exists. And it puts in place a procedure where there may not be any negotiation going on between the parties because they were operating under an unexpired agreement, hypothetically, that wasn't on the verge of expiration. So it forces discussion perhaps earlier than the parties would have under normal circumstances. Am I right? Yes. So if we think about the circumstances in an expired context, there's an obligation to negotiate cooperation in the NLRA. And if you hit impasse, at that point the debtor can engage in unilateral changes. Is that right? Correct. So why isn't it that sufficient to protect the debtor in an expired circumstance? Because you have that mechanism under the NLRA that allows you to make changes after impasse. Well, because the entire purpose of Section 1113 is to deal with situations in which the need for restructuring labor costs is urgent. And the court must apply, as the Bankruptcy Court did apply here, very stringent substantive criteria. And 1113 is a pro-labor statute. The sum is put on the scale in favor of labor. The substantive criteria that must be met before a bankruptcy judgment, approved rejection of a collective bargaining agreement, are quite stringent, including that the union must have rejected the employer's proposal without good cause. Congress dealt in a comprehensive way in 1113 with the situation in which the employer really does need relief from its obligations or it will go into liquidation. So it's your view that the traditional NLRA bargaining impasse process is just too slow and having the timeframes that 1113 talks about in court supervision brings things to a head faster and gets the relief necessary, both mindful of the needs of the workforce, but at the same time making sure that the debtor doesn't go into liquidation. I would phrase it only an iota differently, which is it's not my view. It's the view that motivated every member of Congress who spoke about 1113. If we do look at legislative history, there was never any suggestion anywhere in the legislative history of 1113 that anything should be subjected to the NLRA process. There was talk of passing stringent substantive criteria, and indeed the faction that wanted very stringent substantive criteria, far more stringent than the Bilisco case, prevailed in Congress, and those criteria are indeed quite stringent. But there is no suggestion in the legislative history of 1113 or in its text that there is a preference for taking this bankruptcy-centric issue, which is must the debtor restructure its labor costs to survive, and sending it to a different agency in a different process, the NLRA and NLRB process. Every person involved in a bankruptcy process would like to have some other process. Your adversary said that you made a concession about 1113 not covering statutory obligations. Is that accurate? Yes, because it's not our argument that 1113 covers statutory obligations. It's our argument that 1113 allows the rejection of the collective bargaining agreement and that the consequence is that the status quo obligations imposed by the NLRA no longer apply. So we haven't conceded anything of substance, but it is the way the statute operates, is by allowing rejection of the collective bargaining agreement, not by allowing the rejection of statutory obligations. So your argument is that this statute relieves you of maintaining the status quo? If a bankruptcy judge makes the requisite findings, which are quite stringent, and if the parties have engaged in the requisite process, which is very demanding on the employer, then yes, by rejecting the collective bargaining agreement that sets the terms that define the status quo, the employer may change the status quo, as indeed is what happened in this case, and as indeed, according to uncontradicted findings below, is what must happen if this debtor is to survive. Thank you. The NLRA process was not drafted with bankruptcy policy in mind. Section 1113, on the other hand, was drafted very much with both labor and bankruptcy policy in mind, and it is Congress's conscious effort to accommodate giving the union all kinds of substance protections, but giving the statute broad scope, again, as reflected in the contrast between 1113A, which does not use the words executory error and expired, and 365A, which does use those words. It also matters that the provision being construed as part of the bankruptcy code, one of the core policies of the code, particularly its reorganization provisions, is to preserve, if possible, an ongoing business. If Section 1113 is construed in accordance with its text, to have a broad scope with no limitation to executory or unexpired collective bargaining agreements, then the court, with a comprehensive understanding of what it takes to preserve a business, can apply the stringent substantive criteria of Section 1113 to decide whether and how to modify terms and conditions of employment that were previously agreed to. On the other hand, if Section 1113 ceases to be applicable the moment a collective bargaining agreement expires, then the often protracted NLRA process, rather than the bankruptcy process, takes over. Last but not least, the union's position leads to a situation that is anomalous, if not downright absurd. The union would make a collective bargaining agreement far harder to change after it expires than when it's still enforced by its own terms. That is the opposite of the normal freedom of contract, and it would make the law most disfavor those employers with the strongest equitable case, employers who have proved to a judge's satisfaction that they must liquidate unless they can be relieved from the terms they previously agreed to, and who did not voluntarily agree to be bound by those terms past the expiration date of the collective bargaining agreement. Let me ask you a question. The union filed an unfair labor practice in this case before the NLRB. When was that? There have been quite a number filed all after the bankruptcy court's decision and before. And what lengths of time have they been pending? Oh, gosh, they've been pending relatively short periods, but there is a recommendation from a subunit of the NLRA to sustain some of those unfair labor practice charges, so it is quite important that this court affirm that the Section 1113 process here has superseded the NLRA's process. A regime that makes it easier to get out from under a burdensome agreement while it's actually in effect and harder after it expires, which is what the union asked for, simply makes no sense. Fortunately, neither text nor legislative history even hints that Congress had such a bizarre scheme in mind. But in the statute it talks about the words termination is used to terminate. How can you terminate something that's expired? Or do you have a different impression of what terminate means in that clause of the statute? That word is used only in Section 1113d, and it is used in a very special sense because it allows termination in the event that the court has not ruled within 30 days. But it also makes clear that the operation of law terminating a collective bargaining agreement ceases to have effect when and if the court rules. So we can't learn much from the use of the word terminate in Section 1113d because it's not being used in the dictionary sense of end permanently. It's just a way of saying what happens if the bankruptcy court didn't rule. And, of course, here the bankruptcy court did rule. And what about the language of in effect that's in the statute? It makes reference to being able to seek emergent relief if the collective bargaining agreement is, quote, in effect. Does that suggest anything to you about how to interpret this statute? It is mildly helpful to our position. Of course, the bankruptcy court relied on that language to say it's a term of art from the NRA process, citing the Litton case in the Supreme Court. And the Supreme Court did use continues in effect to refer to the post-expiration effects of the terms and conditions of the collective bargaining agreement. It is mildly helpful, but since 1113e, which refers to interim changes, is not the section directly at issue here, we have not placed as much weight on that provision as Judge Gross did. But it is helpful to our position. Thank you very much, Counsel. Thank you, Your Honor. I'd like to get back to what it means, then, to terminate a contract that doesn't exist, that's been expired, that's pulling, excuse me, to reject a contract in bankruptcy after it's expired and has been fully performed. The textual link that we're talking about is not the words exist, or unexpired. It's reject. The bankruptcy concept of rejection means that the contract, while it's in effect, the debtor is allowed to reject, that is, to relieve itself and the counterparty of any further performance of the remainder of the contract and translate that breach into pre-petition damages. That's the basic concept of reject. Assume also goes in parity with a contract. You can only assume a contract while it's in effect. You can only reject a contract while it's in effect. There's no bankruptcy concept that we know of and that the Congress knew of that dealt with rejecting a contract after it had expired and been fully performed by both parties because there's no purpose in doing that. And so what 1113C does is exactly track assumption and rejection. The terms are not accept and reject, but it's assume and reject in bankruptcy. Those are terms of art that have classic bankruptcy roots, and everybody knew at the time what it meant to assume a contract during its life or to reject a contract during its life. So when 1113 was crafted, there was no need to say unexpired because a contract or an agreement means an agreement during the life of that agreement, and the Supreme Court had made that abundantly clear on several occasions. There was also no need to say unexpired because, or executory, excuse me, because by definition a collective bargaining agreement is a subcategory of executory contract. There's no need to say executory because unlike some contracts, a collective bargaining agreement remains fully executory by definition when the performance is owned by both parties up until the very date of its expiration. But doesn't the statute require performance by both parties? The statutory obligations require continuing performance by both parties. Continuing performance of NLRA statutory obligations. Informed by what the words of the collective bargaining agreement say. Not necessarily, Your Honor. It's not going to let you change the wages or the amount of benefits. So, I mean, that's informing the conditions that continue. Definitely. But a contract, a collective bargaining agreement is a package of concessions by both parties, and for the worker's side of the contract, most of those concessions have to do with waivers of statutory rights. Once the contract comes to an end, as this one did, almost all the waivers, if you will, that the employees had given away during the term of the contract, the waiver of the right to strike, the waiver of the right to go to court and state court or federal court and get a trial for breach, limitations on damages, arbitration, all of those waivers, if you will, of statutory rights, including the right to demand renegotiation of terms and conditions of employment on a day-to-day basis, those are all packaged as the quid pro quo of a collective bargaining agreement. Once that agreement expires, the parties are relegated to a different universe with its own set of defined obligations that are defined by the law. If the salaries which must be paid under that new defined universe are what is going to force the debtor to go out of business, under the bankruptcy code, don't we need to look at that ongoing obligation created by the collective bargaining agreement? That obligation exists only so far as the debtor has not yet proposed and bargained and then said I've bargained enough, we're not going to reach agreement. We're dealing in a reorganization where time is of the essence. And time can be, we've said in cases shown that an exigency, if you can have it, works. Well, time is of the essence when the debtor tried to bargain with the union before it went into bankruptcy and the union was being very uncooperative. Exactly the situation for which a bankruptcy petition and a rejection during the term of the contract was designed because otherwise under established law it is neither party's obligation to even think of renegotiation. If a bankruptcy petition is filed and an application to reject is made during the term of the contract, that barrier is removed. But the parties, even though it's through the process, they are not left with the bankruptcy judges settling them with new conditions that are in the bankruptcy court's view necessary to reorganization. Valdisca makes clear and the law is clear that as soon as the rejection order is issued, the debtor is back to the obligation under the National Labor Relations Act that he has, in our case, post-expiration. In other words, whatever the status quo is on that day, the debtor is required to resume bargaining and bargain from scratch over new conditions on a day-to-day basis until they reach agreement or impasse under the National Labor Relations Act. And that has not been changed by 1113C, which is precisely why the rejection assumption mechanism is not only not necessary but serves no bankruptcy purpose when there is no contract in effect that needs to be cleared away so that the parties are free to negotiate. And again, nothing about 1113C changed that in any way. That was the law before 1113C. It was the law recognized in Valdisca and it is the law after Valdisca. As a matter of fact, the debtors here, having gotten an order authorizing them to reject, are still under an obligation to negotiate from scratch with the union over what will be the conditions going forward. Thank you, counsel. Thank you. The court will take the matter under advisement and we thank you all for your excellent arguments and your outstanding briefs.